**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **GUSTA R. BYAS,** | § | |
| | § | |
| **Plaintiff,** | § | |
| **v.** | § | |
| | § | **CIVIL ACTION NO. 4:09-CV-3621** |
| **WASHINGTON MUTUAL BANK,** *A* | § | |
| *Division of  JP Morgan Chase Bank,* | § | |
| *N.A.,* | § | **A Jury Is Demanded** |
| **Defendant** | § | |

## OPPOSED MOTION TO EXTEND TIME FOR VOIR DIRE

Gusta Byas, plaintiff, moves to extend the time for voir dire in this case to 45 minutes per side.  WaMu is opposed.

### 1.

#### QUESTION PRESENTED

Will forty-five minutes of voir dire per side give both parties a chance to properly exercise their challenges for cause and peremptory strikes?   The answer is yes.

### 2.

#### VOIR DIRE IS CRITICAL TO A FAIR AND IMPARTIAL JURY

Voir dire is the only time the Court and attorneys can speak directly to prospective jurors. Voir dire gives the Court and the parties the opportunity to discover conscious or subconscious preconceptions, biases, or other facts.  The process is critical to the selection of a fair and impartial jury.  Adequate time for voir dire is necessary for the intelligent and effective exercise of challenges. *Swain v. Alabama*, 380 U.S. 202, 218-219 (1965), *overruled on other grounds, Batson v. Kentucky*, 476 U.S. 79 (1986), *see also*, *In Re Commitment of Hill*, 334 S.W.3d 226,

228 (Tex. 2011)(*per curiam*)("Litigants have the right to question potential jurors to discover biases and to properly use peremptory challenges.")[citation omitted].

However, there are two competing interests.  The attorneys want to zealously represent their clients and find out everything which could possibly be discovered.  The Court is interested in conducting an efficient jury selection that does not unnecessarily invade the private lives of prospective jurors.

Balancing those competing interests, the American Bar Association has promulgated standards for Jury Selection.  See, Pl. Ex. 1, *ABA Jury Project Standards*, Principle 11, at pp. 67-68.  The ABA recommends in 11.B.2 that:

> 1.    Questioning of jurors should be conducted initially by the court, and should be sufficient, at a minimum to determine the jurors' legal qualification to serve in the case.
>
> 2.    Following initial questioning by the court, each party should have the opportunity, under the supervision of the court and subject to reasonable time limits, to question jurors directly, both individually and as a panel.  In a civil case involving multiple parties, the court should permit each separately represented party to participate meaningfully in questioning prospective jurors, subject to reasonable time limits and avoidance of repetition.
>
> 3.    Voir dire should be sufficient to disclose grounds for challenges for cause and to facilitate intelligent exercise of peremptory challenges.
>
> 4.    Where there is reason to believe that jurors have been previously exposed to information about the case, or for other reasons are likely to have preconceptions concerning it, the parties should be given liberal opportunity to question jurors individually about the existence and extent of their knowledge and preconceptions.
>
> 5.    It is the responsibility of the court to prevent abuse of the juror selection examination process.  *ABA Jury Project Standards*, Principle 11.B.1-5, p. 67

Limiting the amount of time or not permitting attorneys to question at all erodes the ability of counsel to intelligently exercise the right to challenge or strike.  *Press-Enter. Co. v.*

*Superior Court of California, Riverside County*, 464 U.S. 501, 522, n. 2 (1984)(J. Marshall, concurring op.) citing Babcock, *Voir Dire: Preserving "Its Wonderful Power"*, 27 STAN.L.REV. 545 (1975)(limiting voir dire examination undercuts the ability of litigants to utilize fully the right to a jury trial and works to the relative disadvantage of poor litigants who lack the resources to use other means to gather information about potential jurors). Pl. Ex. 2.

The ABA concluded that "voir dire by the judge, augmented by attorney-conducted questioning, is significantly fairer to the parties and more likely to lead to the impaneling of an unbiased jury than is voir dire conducted by the judge alone. A simple perfunctory examination by a judge does not 'reveal preconceptions or unconscious bias.'" *ABA Jury Project Standards*, c. Principle 11.B, at p. 74 citing *Dingle v. State*, 759 A.2d 819, 828-29 (Md. 2000); *see also, Durbin v. Nourse*, 664 F.2d 1109, 1115 (9th Cir. 1981); *State v. Ball*, 685 P.2d 1055, 1058 (Utah 1984).

Byas does not seek unlimited time to conduct voir dire. Byas proposes a limited amount of time for each party that permits sufficient questioning. The goal is to discover information important to the intelligent exercise of their strikes and to make appropriate challenges for cause. Byas does not intend to nor will she "argue" her case in voir dire. Byas wants attorney-led voir dire of sufficient time to allow her to fully exercise her rights. Forty-five minutes per side is reasonable and does not dramatically increase the amount of time to try this case.

**3.**

**THOROUGH VOIR DIRE AVOIDS JUROR DISHONESTY**

A 1991 study made just that point. Researchers observed jury selection for 31 criminal trials, interviewed 190 jurors after the trials were over, and asked many of the same questions jurors had answered during voir dire. About one-fourth (1/4) indicated during the post-trial

interviews that they or a family member had been a crime victim: information that they had not revealed in voir dire. Almost thirty percent (30%) told interviewers they knew someone in law enforcement but had failed to reveal this in court. See, Richard Seltzer, Mark A. Venuti and Grace M. Lopes, *Juror Honesty During the Voir Dire*, JOURNAL OF CRIMINAL JUSTICE, Vol. 19, pp. 451-462 (1991). Pl. Ex. 3.

Jury dishonest distorts the process and poses a real danger to both sides. The only solution is to provide sufficient time for the attorneys in the case to examine the prospective jury.

Therefore, Byas requests 45 minutes per side. The amount of time added to the trial of the case is insignificant when the benefits are considered. While 45 minutes does not guarantee jury honest, it will provide both parties with a significant opportunity to evaluate the potential juries. Allowing this process will significantly contribute to an impartial jury and a fair trial for both sides.

## 4.

### ATTORNEY-LED VOIR DIRE IS MORE EFFECTIVE THAN JUDGE-LED VOIR DIRE

Byas does not suggest that the Court is incapable of asking questions and obtaining important information. Instead, Byas respectfully requests that the Court permit the lawyers to conduct the majority of the voir dire in this case. This request is supported by empirical studies showing that potential jurors are more candid with attorneys than with judges.

The study conducted by Seltzer, et al., reviewed short (under an hour) judge-led voir dire. *Id.* That study revealed significant juror dishonesty regarding matters important to the litigants. *Id.* For example, whether a juror was a victim of a crime or knew someone in law enforcement this information was not revealed in a criminal trial. *Id.*

4

Another study directly examined jury candor in 1987.  *See*, Susan E. Jones, *Judge-versus Attorney-Conducted Voir Dire, An Empirical Investigation of Juror Candor*, LAW AND HUMAN BEHAVIOR, Vol. 11, No. 2, pp. 131-146 (1987).  Pl. Ex. 4.

The study found jurors less likely to be candid when asked questions by judges.  This peer-reviewed study used a straightforward methodology.  One hundred and sixteen (116) eligible jurors filled out written questionnaires about their attitudes on the legal system. Then they were brought into the courtroom for voir dire sessions conducted by persons with legal backgrounds playing the roles of judge and attorneys. The mock jurors were asked the same questions they had answered earlier in the questionnaires. Researchers noted any differences in jurors' responses.

The study found that potential jurors were nearly twice as likely to change their answers in the courtroom when questioned by a judge as when questioned by a lawyer. Women were somewhat more likely to change their answers than men. Even three ministers who participated in the sessions changed their answers significantly. Across the board, the mock jurors were more candid about their attitudes and beliefs when the lawyers conducted voir dire.

Researchers concluded that the mock jurors tried to supply the answer they believed the judge wanted to hear -- the one they believed to be the most socially acceptable -- rather than their true belief.  This was an attempt to confirm to a perceived judicial standard.  Therefore, they shifted from moderate attitudes to more conservative ones.

The fundamental issue is the status of the federal court judge, not the judge's ability to ask questions.  The bench, robe, and demeanor of the federal court are visible signs of authority and carry a higher social status than the lawyers in the case.

The respect jurors have for the position of judge -- and most show great deference to the court -- does not make potential jurors more forthcoming when talking to a judge. On the contrary, that respect creates a desire to please the judge and to avoid embarrassment by conforming to a perceived notion of what is socially acceptable.   This type of modification of the response seriously curtails the ability of the litigants to obtain a fair and just verdict.

**5.**

### THE SIMPLE SOLUTION:  PERMIT ADDITIONAL TIME FOR ATTORNEY VOIR DIRE

Byas' request is a simple solution that will further the goal of a fair and impartial trial. For the investment of up to one and half hours (it is possible that not all the time will be used), both parties receive the fair and impartial trial that they are guaranteed by the Constitution.  The amount of time requested does not materially add to the time spent trying the case.

This motion does not seek to restrict the amount of time that the Judge spends examining potential witnesses in voir dire.  Rather, it seeks permission to allow the attorneys to conduct the voir dire because the attorneys are in the best position to examine the possible bias and prejudice of the potential jurors given their extensive knowledge of the facts which are to be considered by the jury.

### CONCLUSION AND PRAYER

Gusta Byas requests permission for the attorneys to conduct 45 minutes of voir dire for each side.  Studies addressing this question have revealed that attorney-conducted voir dire is critical to discovering the true outlooks of potential juries.  The right to trial by jury is supported by allowing attorney-conducted voir dire of a meaningful amount of time.  Byas prays that this Court grant this motion and provide 45 minutes of voir dire to each side.

Respectfully submitted,


    /s/ Thomas H. Padgett, Jr.
Thomas H. Padgett, Jr.
Attorney-in-Charge
4809 Pine St.
Bellaire, Texas 77401
Ph:  832-335-9134
Fax:  713-664-2049
Email: tpadgettlaw@gmail.com

ATTORNEY FOR BYAS




## CERTIFICATE OF CONFERENCE

This certifies that I have discussed the relief requested in the motion with Ethel Johnson. Mr. Johnson states that her client is opposed.

/s/ Thomas H. Padgett, Jr.
Thomas H. Padgett, Jr.


## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of this motion was served electronically as follows on January 5,  2012:


Ethel J. Johnson
Shook Hardy & Bacon, LLP
JPMorgan Chase Tower
600 Travis Street, Suite 1600
Houston, Texas 77002-2992


/s/ Thomas H. Padgett, Jr.
Thomas H. Padgett, Jr.